# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Dublin Division

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 9:29 am, Aug 26, 2016

| | | |
|---|---|---|
| In the matter of: | ) | Chapter 13 |
| | ) | |
| TODD POWELL, | ) | Number <u>14-30471-EJC</u> |
| | ) | |
| *Debtor.* | ) | |
| | ) | |
| TODD POWELL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Adversary |
| v. | ) | |
| | ) | Number <u>14-03021-EJC</u> |
| SHORTY'S USED CARS | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OF DECISION

The Debtor, Todd Powell, filed his Chapter 13 petition and plan on November 19, 2014. (Dckt. 1). In his Schedule "B", the Debtor listed two vehicles, a 1997 Dodge 3500 truck and a 1999 Honda Passport automobile. *Id.* The Debtor listed Shorty's Used Cars ("Shorty's") as holding a security interest in each vehicle. *Id.* As of the petition date, the Debtor had not made payments on the vehicles for more than a year. The Debtor's plan proposed to retain the vehicles and continue to make monthly payments to Shorty's at an interest rate of 5.25%. On November 12, 2014, seven (7) days prior to the Debtor filing bankruptcy, Shorty's dispatched two wreckers to repossess both vehicles. For reasons that will be explained below, Shorty's only repossessed the Honda Passport automobile.

AO 72A
(Rev. 8/82)

On November 19, 2014, the date of the filing of the petition, Debtor's counsel faxed a letter to Shorty's demanding return of the Honda Passport as property of the estate. Shorty's declined the request but offered to allow the debtor to redeem the vehicle for $4,025.36. The Debtor responded by filing the instant adversary proceeding. This Court held a trial on the matter on March 14, 2016. The Debtor did not appear at trial. The owner of Shorty's, Wendell Bearden, did not appear either. However, Debtor's counsel had subpoenaed Shorty's agent, Ed Saunders, whose limited testimony provided sufficient evidence for the Court to decide the merits of the case. Upon conclusion of the trial, the Court took the matter under advisement. Based on the evidence presented and other matters in the record the Court finds that Shorty's has willfully violated the automatic stay provisions of 11 U.S.C. § 362.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(E). In accordance with Bankruptcy Rule 7052, the Court makes the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. The Parties' Contentions

The Debtor contends that at the time of filing his bankruptcy he still had an interest in the Honda Passport, namely his right to redemption, and thus the vehicle became property of the Debtor's bankruptcy estate. Accordingly, the Debtor argues that Shorty's

violated the automatic stay provisions of 11 U.S.C. § 362 by refusing to return the Honda Passport upon the Debtor's demand and by conditioning the return of the vehicle upon full payment of any past-due balance. The Debtor further contends that he suffered actual damages as a result of Shorty's violation.

In Shorty's proposed findings of facts and conclusions of law, it suggested the following defense:

> The defendant financed two vehicles to the Plaintiff/Debtor. Both vehicles under separate contracts, were in default and the payments were nearly one year behind. Prior to the Plaintiff filing the bankruptcy action, the Defendant sent [wreckers] to repossess the two cars. Mr. Powell offered Mr. Bearden, the principal [of] Shorty's [Used] Cars that if Shorty's would only repossess one car and leave the other, the truck, Mr. Powell would catch up the late payments and Mr. Powell promised that there would be no more late payments. Mr. Bearden accepted the offer, allowing Mr. Powell to keep the truck. The defendant has possession of the car.

(Adv. Dckt. 45).

It is Shorty's position that the Debtor gave up any interest he had in the Honda Passport when he entered into the above-mentioned agreement with Mr. Bearden. Accordingly, the Honda Passport never became property of the estate as defined by 11 U.S.C. § 541. This would have presented an issue for the Court to decide, however, as will be explained, Mr. Bearden did not appear at the trial and no other evidence of any such agreement was submitted to the Court.

B. The Pre-Trial Proceedings

On December 19, 2014, the Debtor served the adversary Complaint (adv. dckt. 1) on Shorty's, who then filed its First Answer to Complaint (adv. dckt. 4) on January 20, 2015. The parties held their Rule 26(f) conference on April 13, 2015, but did not submit a

Rule 26(f) report. Accordingly, the Court held a show cause hearing on June 9, 2015 due to the parties' failure to file such a report. The parties did not file their Rule 26(f) report until June 24, 2015. (Adv. Dckt. 16). As a result, the Court was unable to file its Scheduling Order until June 29, 2015. (Adv. Dckt. 17). Neither party pursued discovery.

1. The Parties' Rule 26(a)(1) Disclosures

On February 17, 2015, Debtor's counsel served Shorty's counsel with the Debtor's Rule 26(a)(1) disclosures and identified the Debtor as the only witness with information regarding the case. (Adv. Dckt. 6). The disclosures also asserted that the only documents in the Debtor's possession were attached to the Complaint. However, there are no documents attached the Debtor's Complaint. On September 23, 2015, Debtor's counsel supplemented the Debtor's disclosures and identified that the Debtor's turnover demand letters dated November 19, 2014, proof of insurance on the Honda Passport, and Shorty's response letter dated November 20, 2014 were currently in possession of the Debtor. (Adv. Dckt. 24, 25).

For whatever reason, Shorty's found some difficulty in making its Rule 26(a)(1) disclosures. On September 13, 2015 the Court held a pre-trial conference, at which point it was brought to the Court's attention that Shorty's had yet to serve Debtor's counsel with its disclosures. At the conference, counsel for Shorty's stated that he thought he had already sent Shorty's Rule 26(a)(1) disclosures to Debtor's counsel. However, Debtor's counsel denied receiving any such disclosures. After giving Shorty's counsel the benefit of the doubt, the Court gave Shorty's a deadline of September 16, 2015 to file its Rule 26(a)(1)

disclosures[1]. Shorty's did not file its Rule 26(a)(1) disclosures until March 11, 2016, well beyond the 72-hour deadline granted by this Court and only three days prior to trial. (Adv. Dckt. 49). In its Rule 26(a)(1) disclosures, Shorty's identified Ed Saunders and Wendell Bearden as the only two parties with information regarding the case. Shorty's also asserted that the car title for the Honda Passport, which was never produced, was the only document in its possession.[2] (Adv. Dckt. 49).

### 2. The Pre-Trial Order

This case ran into further issues when the parties attempted to file a proposed pre-trial order. Pursuant to this Court's Scheduling Order, the deadline for filing a pre-trial order was August 10, 2015. On August 12, 2015, the Court sent the parties a notice of show cause hearing for failure to file a proposed pre-trial order. (Adv. Dckt. 12).

The Court held the show cause hearing on September 8, 2015. At the hearing, it became clear to the Court that the pre-trial order had not been filed due to what the Court can best describe as a lack of communication between the parties. According to Debtor's counsel, she had drafted her portion of the order and was awaiting a response from Shorty's counsel. However, she also stated that she had not reached out to Shorty's counsel prior to the date of the hearing. In any event, the Court gave the parties two weeks to submit a joint

---

[1] Pursuant to Federal Rule of Civil Procedure 5(d)(1), disclosures under Rule 26(a)(1) "must not be filed until they are used in the proceeding or the *court orders filing*." Fed. R. Civ. P. 5(d)(1) (emphasis added). Here, the Court ordered Shorty's to file its Rule 26(a)(1) disclosures because it was unclear whether Shorty's counsel had ever served Debtor's counsel with such disclosures.

[2] The Court questions whether the Honda's car title was the only document in Shorty's possession. At a minimum, a car dealer such as Shorty's would likely retain a copy of the sales contract.

pre-trial order.

On September 28, 2015, Debtor's counsel submitted a proposed Joint Pre-Trial Order, which signed by counsel for both parties. (Adv. Dckt. 27). On October 13, 2015, the Court held a pre-trial conference to review the Joint Pre-Trial Order. At the conference, the Court identified a number of deficiencies and requested that counsel submit a revised Joint Pretrial Order by Friday, October 16, 2015. Debtor's counsel finally submitted an Amended Joint Pre-Trial Order on November 20, 2015, but was unable to get Shorty's counsel to sign it. (Adv. Dckt. 33). Accordingly, on January 4, 2016, the Court issued a notice of show cause for failure to file a consolidated pre-trial order. (Adv. Dckt. 35). The Court held the show cause hearing on February 9, 2016. Counsel for Shorty's did not appear at this hearing. In order to prevent further delay, the Court drafted its own pre-trial order (adv. dckt. 41) and set a trial date for March 14, 2016.

C. The Trial

When the Court called the case on March 14, 2016, noticeably absent from the courtroom were the Debtor and Mr. Bearden, the owner of Shorty's. Debtor's counsel stated that she had not been in contact with the Debtor since February 2016, but surmised that the Debtor's failure to appear was likely related to his severe medical condition. An agent of Shorty's, Mr. Ed Saunders, who was under subpoena by the Debtor, was the only witness available to testify.

1. Debtor's Motion for Continuance

Prior to the start of the trial, Debtor's counsel orally moved for a continuance

of the trial based on her client's absence, but Shorty's counsel objected to the continuance as prejudicial to his client. He also stated that any medical excuse for the Debtor's failure to appear should be scrutinized by the Court. The Court decided to withhold ruling on the continuance motion and allowed the trial to move forward with the only available witness, Mr. Saunders. The Court agreed to revisit the motion for continuance at the end of Mr. Saunders testimony.

   2. Shorty's Motion in Limine

        Before taking testimony, the Court also took up Shorty's Motion in Limine (adv. dckt. 50) filed the morning of the trial. In the motion, Shorty's asserted that no documents had been timely produced by the Debtor, and thus any documents produced by the Debtor at trial should not be admitted into evidence. To settle the issue, the Court revisited the transcript of the October 13, 2015 pre-trial conference at which the Court and counsel discussed what exhibits would be used at trial. At the pre-trial conference, Debtor's counsel stated that the parties had stipulated to the two turnover letters faxed by the Debtor to Shorty's and the reply letter sent by Mr. Saunders to the Debtor. At no point during that October 13th pre-trial conference did Shorty's counsel object or contradict this statement.

        The Court also reviewed the initial Rule 26(a) disclosure made by the Debtor, which provided in response to disclosure 1B, relating to documents: "[D]ocuments currently in possession of the debtor were attached to [his] complaint. If debtor finds any additional documents, then counsel for defendant will be notified." (Adv. Dckt. 6). As previously stated, no documents were attached to the Debtor's Complaint. (Adv. Dckt. 1). However, when

Debtor's counsel filed the supplemental Rule 26(a) disclosure, she attached the turnover letters and the Debtor's proof of insurance on the Honda Passport. (Adv. Dckt. 25).

Accordingly, the Court denied Shorty's Motion in Limine and allowed into evidence: (1) the two turnover letters sent by the Debtor, one dated November 19, 2014 at 2:07 p.m. and one dated November 19, 2014 at 3:03 p.m.; (2) the response letter sent by Mr. Saunders dated November 20, 2014; and (3) the Debtor's proof of insurance on the Honda Passport. In addition, the Court finds the following facts:

1. The Debtor filed his Chapter 13 case on November 19, 2014.

2. In his Schedule B, the Debtor listed two vehicles: a 1997 Dodge 3500 and a 1999 Honda Passport.

3. In his Schedule D, the Debtor listed Shorty's as the lien holder on both vehicles.

4. In his Statement of Financial Affairs, the Debtor stated that the 1999 Honda Passport was repossessed on November 11, 2014.

5. The Defendant admitted paragraphs 3, 5 and 6 of the Debtor's Complaint, which reiterates the above facts.

3. <u>The Testimony of Ed Saunders</u>

The sole witness to testify at the trial was Mr. Saunders who was able to testify as to at least some of the facts in this case. Mr. Saunders testified that he had been friends with the owner of Shorty's, Mr. Wendell Bearden, for nearly 30 years. Although he asserted that he was not an employee of Shorty's, he acknowledged that he was in daily contact with Mr. Bearden and helped him with "special projects" in exchange for "good deals" on cars. Further, Shorty's counsel consistently referenced Mr. Saunders as Shorty's agent at the trial.

Accordingly, the Court finds that Mr. Saunders was an agent authorized to communicate Shorty's position regarding the repossession to Debtor's counsel.

Mr. Saunders further testified that Mr. Bearden brought him the November 19, 2014 demand letters faxed by Debtor's counsel and asked his opinion of what to do about it. (Adv. Dckt. 55, p. 28, ln. 4). After speaking with Mr. Bearden, Mr. Saunders decided to draft a response letter, dated November 20, 2014. The letter read as follows:

---

Shorty's Used Cars, Inc.                                                   November 20, 2014
5800 5th Ave
Eastman, GA 31023

Claeys, McElroy-Magruder, Kitchens & Associates
1205 Bellevue Ave. Suite A
Dublin, GA 31021

Dear Ms. McElroy-Magruder:

Thank you for your fax of November 19, 2014 referencing Todd Powell and the 1999 Honda Passport automobile he had financed with Shorty's Used Cars, Inc.

While I do understand that Mr. Powell has filed a Chapter 13 Bankruptcy pleading, that filing was on November 19, 2014. On November 12, 2014; seven days prior to Mr. Powell's filing, our collateral (the 1999 Honda) was repossessed for delinquent payments. Therefore it would not be part of his Chapter 13 estate.

In the spirit of cooperation, we will stay our further collection and recovery efforts by storing the subject automobile, without charge, until 12:01 A.M., December 20, 2014. During that time frame, Mr. Powell may redeem the Honda by tendering the past due balance of $4025.36 in cash or Certified Funds to Shorty's Used Cars Inc.

In closing, I would like to mention that the word C-O-N-F-I-D-E-N-T-I-A-L is not spelled "confidental" as it appears on your Telefax Cover Page. Perhaps if you correct the file on that document, it will prevent further embarrassment to your firm.

SHORTY'S USED CARS, INC.
*s/ Ed Saunders*
Ed Saunders                                (404) 402-5283

---

With regard to this letter, Mr. Saunders stated that he did some research on the internet and

◈AO 72A
(Rev. 8/82)

decided that because Shorty's had repossessed the vehicle pre-petition it had no obligation to return the vehicle.

As previously mentioned, Shorty's contended at the pre-trial conference, and in the pre-trial order, that the Debtor and Mr. Bearden came to a mutual agreement that the debtor would surrender the Honda Passport and immediately start making payments on the truck in consideration of Shorty's foregoing its legal right to repossess the Debtor's vehicles. Despite this theory of defense, Shorty's introduced no evidence as to the details of an alleged agreement between the parties. The only mention of any alleged agreement came from Mr. Saunders testimony regarding his appearance at the Debtor's §341 meeting. Mr. Saunders testified that he spoke with the Debtor in the hallway outside of the §341 meeting and the Debtor stated "whatever decisions Shorty makes he would respect." (Adv. Dckt. 55, p. 40). No further evidence of any alleged agreement between the Debtor and Mr. Bearden was provided by either party.

The Court also heard testimony from the Debtor's counsel, Mrs. Angela McElroy-Magruder, regarding attorney's fees incurred by the Debtor as a result of this adversary proceeding. The Debtor did not offer any other evidence of actual damages, including damages suffered as a result of Shorty's refusal to turnover the Honda Passport. Mrs. McElory-Magruder provided a short narrative of the work performed in this adversary, beginning with sending the turnover letters, filing the complaint, reviewing the answer, multiple attempts to file a joint Rule 26(f) report and pre-trial order, appearances at the numerous hearings in this case, and meetings with the client. Overall, she testified to

$6,625.00 of attorney's fees at a rate of $250 per hour. However, this number did not include any work performed at the trial.

To allow Mrs. McElroy-Magruder to include work performed at the trial, the Court granted her ten (10) days to file an affidavit that provided her time records for the entire adversary. The Court also allowed Shorty's counsel ten (10) additional days to object to the reasonableness of any particular time entry. On March 16, 2016, Mrs. McElroy-Magruder submitted her Affidavit of Time Spent, which listed her total time spent on the adversary as 29.20 hours at $250.00 an hour, totaling $7,300.00 in attorney's fees. (Adv. Dckt. 52). Shorty's counsel did not file an objection to the affidavit. Having studied the record in this case and being well familiar with the professional background of Debtor's counsel, the Court finds the total hours (29.20) and the hourly rate charged ($250.00) more than reasonable.

## III. CONCLUSIONS OF LAW

A. Property of the Estate

The commencement of a bankruptcy case, upon the filing of a voluntary petition, creates a bankruptcy estate. 11 U.S.C. §§ 301, 541(a). If the debtor commences a case by filing a petition under Chapter 13, "property of the estate" includes, among other interests, those property interests specified in section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 1306. Such property interests include "all legal or equitable interests of the debtor in property as of the commencement of the case," without regard to the fact that the debtor is not in possession of the property. 11 U.S.C. § 541(a)(1). A debtor retains a legal interest, within the meaning of § 541(a)(1), in a vehicle repossessed prior to the filing of the debtor's petition so

long as the debtor continues to hold legal title to the vehicle under applicable state law. *See Motors Acceptance Corp. v. Rozier (In re Rozier)*, 376 F.3d 1323, 1324 (11th Cir. 2003). Under the Georgia law applicable to this case, "'ownership of collateral does not pass to a creditor upon repossession, but remains with the debtor until the creditor complies with the disposition or retention procedures of the Georgia [Uniform Commercial Code].'" *Rozier*, 376 at 1324 (citing *Motors Acceptance Corp. v. Rozier*, 278 Ga. 52 (2004)).

In this case, the Defendant repossessed the Honda Passport seven days prior to the filing of the Debtor's petition. Further, no evidence has been presented that indicates that Shorty's ever complied with the disposition or retention procedures of the Revised Article 9 of the Georgia Uniform Commercial Code.[3] Accordingly, the Honda Passport would seemingly have become property of the Debtor's bankruptcy estate upon the filing of the Debtor's petition on November 19, 2014. However, Shorty's argues that the Debtor voluntarily gave up any interest he may have had in the Honda Passport when he surrendered the vehicle pursuant to the alleged agreement between the parties on November 12, 2014. Accordingly, Shorty's contends that the Honda Passport did not become property of the estate because the Debtor no longer had an interest in the vehicle on the date of filing of the petition.

However, as discussed previously, no evidence of this alleged "agreement" between the Debtor and Shorty's was presented to the Court at the trial. Nor does the November 20, 2014 letter from Ed Saunders, an agent of Shorty's, make reference to any

---

[3] O.C.G.A. § 11-9-101 *et seq.*

such "agreement" entered into by the parties. Further, based upon the following statement in the letter, it appears that Shorty's acknowledged that the Debtor maintained a right to redeem the vehicle as of the date of the filing:

> "In the spirit of cooperation, we will stay further collection and recovery efforts by storing the subject automobile, without charge, until 12:01 AM, December 20, 2014. During that time frame, Mr. Powell may redeem the Honda by tendering the past due balance of $4,025.36 in cash or Certified Funds to Shorty's Used Cars, Inc."

Based upon the evidence presented at trial, the Court finds that no "agreement" to allow repossession of the Honda Passport existed between the parties. Therefore, as explained above, the Honda Passport became property of the estate upon the filing of the Debtor's petition on November 19, 2014.

B. Violation of the Automatic Stay

The commencement of a bankruptcy case also triggers an automatic stay that prevents creditors from "any act to . . . exercise control over property of the estate" or "any act to collect, assess, or recover a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(3),(6). In the Eleventh Circuit, the continued possession of a repossessed vehicle is an act to exercise control over property of the estate, and a creditor who refuses to return it violates the automatic stay. *Rozier*, 376 F.3d 1323.

However, courts disagree as to whether a creditor who repossesses a vehicle before the filing of a bankruptcy case may condition turnover of the vehicle on the provision of adequate protection to which it is entitled under 11 U.S.C. § 363(e). Some courts have concluded that a creditor in possession of a Chapter 13 debtor's vehicle at the time of filing may decline to turn over the vehicle unless the debtor provides adequate protection, such as

proof of insurance coverage. *E.g., Matter of Brown*, 210 B.R. 878 (Bankr. S.D. Ga. July 3, 1997) (J. Davis); *In re Fitch*, 217 B.R. 286, 290-91 (Bankr. S.D. Cal. 1998); *Massey v. Chrysler Financial Corp. (In re Massey)*, 210 B.R. 693, 696 (Bankr. D. Md. 1997). Appellate courts, however, have consistently concluded that the automatic stay and the turnover provisions of § 542(a) are self-executing and that a creditor cannot condition return of the car on the debtor's provision of adequate protection that satisfies the creditor. *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 2013 WL 1891371 (2d Cir. 2013); *Thompson v. General Motors Acceptance Corp., LLC (In re Thompson)*, 566 F.3d 699, 703 (7th Cir. 2009); *Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 7 (10th Cir. BAP 2005).

The Eleventh Circuit has not addressed this issue, but bankruptcy judges in the Northern District of Georgia have ruled that the automatic stay requires the immediate and unconditional return of a repossessed vehicle unless the creditor promptly seeks an order in the bankruptcy court for adequate protection and permission to withhold possession of the vehicle pending the provision of adequate protection. *See, e.g., In re Stephens*, 495 B.R. 608 (Bankr. N.D. Ga. 2013); *Castillo v. Three Aces Auto Sales (In re Castillo)*, 456 B.R. 719, 724 (Bankr. N.D. Ga. 2011). The Court agrees with this approach.

As previously mentioned, the Debtor faxed a letter to Shorty's seeking turnover of the Honda Passport on November 19, 2014. This fax also included proof of insurance on the vehicle. Upon receipt of the fax, Shorty's flatly refused to return the vehicle unless the Debtor tendered the past due balance. At no point did Shorty's seek an order from this Court for adequate protection or for permission to withhold possession of the vehicle pending the

provision of adequate protection. In fact, the Debtor arguably provided adequate protection to Shorty's when it delivered proof of insurance along with its request for turnover. *Brown*, 210 B.R. at 883; *Stephens*, 495 B.R. at 613.

Accordingly, Shorty's violated the automatic stay when it refused to return the car to the Debtor. Further, Shorty's violated the automatic stay when it attempted to collect on its pre-petition claim by conditioning return of the car on full payment of the past due balance owed to Shorty's.

C. Actual Damages

If a creditor violates the automatic stay, an individual harmed by the violation may seek damages under § 362(k)(1). This section provides, in pertinent part, that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A "willful" violation occurs when the creditor knew that the automatic stay had been invoked and intended the action that violated the stay. *Stephens*, 495 B.R. at 615 (citing *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996)); *Brown*, 210 B.R. at 880 ("acts taken following the filing of a petition after actual knowledge of the pendency of the case constitute a willful violation of the automatic stay. . .").

The Debtor contends that Shorty's failure to return the vehicle upon his request was a willful violation of the automatic stay. In this case, Shorty's has expressly acknowledged that it was aware of the Debtor's bankruptcy filing at the time it refused to turn over the

Honda Passport. In his November 20, 2014 letter, Mr. Saunders wrote, "While I do understand that Mr. Powell has filed a Chapter 13 bankruptcy pleading, that filing was on November 19, 2014." Clearly, Shorty's had actual knowledge of the pendency of the Debtor's case at the time it refused to return the vehicle to the Debtor and requested repayment of the past due balance. Accordingly, Shorty's "willfully" violated the provisions of the automatic stay.

Here, the Debtor was injured by the Defendant's refusal to return the Honda Passport in that the Debtor was deprived of the use of the vehicle and was forced to resort to legal action to recover the property. However, the Court cannot assess damages for such deprivation of the use of the vehicle because the Debtor submitted no evidence to establish the existence or extent of any actual damages suffered. However, the Debtor's damages include attorney's fees, which would not have been necessary had Shorty's turned over the Honda Passport. *In re Zanji*, 403 B.R. 891, 895 (Bankr. M.D. Fla. 2008) (holding that "[a]ttorneys' fees are actual damages" and granting attorneys' fees in the absence of other damages); *see also In re Graham* (2011 WL 7658757 at *3) (S.D. Ga. Feb. 25 2011) (J. Davis). As recounted above, the Debtor incurred reasonable attorneys' fees of $7,300.00.[4] Under § 362(k), therefore, Shorty's is liable for the Debtor's attorney's fees in the amount of $7,300.00 that resulted from the willful violation of the automatic stay.

---

[4]This Court finds Debtor's counsel's hourly rate of $250.00 to be reasonable in light of her years of experience and that the total time devoted to prosecuting the adversary was reasonable and necessary within the meaning of 11 U.S.C. § 330.

D. Punitive Damages

As previously mentioned, § 362(k) also authorizes the Court to award punitive damages in "appropriate circumstances." As a general rule, punitive damages for a violation of the automatic stay are appropriate only when the violator has engaged in egregious, intentional misconduct. *Roche v. Pep Boys, Inc. (In re Roche)*, 361 B.R. 615 (Bankr. N.D. Ga. 2005). In determining whether circumstances exist for an award of punitive damages under § 362(k), courts rely on the following factors: 1) the nature of the defendant's conduct; 2) the nature and extent of the harm to the plaintiff; 3) the defendant's ability to pay; 4) the motives of the defendant; and 5) any provocation by the debtor. *Id.* at 624.

The factors primarily applicable here are the nature of Shorty's conduct and its motives. Certainly the Debtor did not provoke the stay violations in any sense. In addition, the evidence shows nothing about Shorty's ability to pay. A violator's net worth could be a factor in determining an amount of punitive damages that is sufficient to accomplish the critical objectives of punitive damages, punishment and deterrence, but neither party raised the issue. With regard to the harm to the Debtor, the evidence does not show any actual economic damages beyond the attorney's fees that the Court has awarded. In fact, Shorty's allowed the Debtor to keep his Dodge Ram 3500, which allowed the Debtor to have access to a vehicle at all times during the turnover proceedings.

With respect to Shorty's conduct and motives, the Court does not find the award of punitive damages appropriate in this case. It is true that Shorty's was well aware of the Debtor's bankruptcy case, however, it appears that Shorty's acted under a good faith belief

that it was entitled to retain the Honda Passport until the Court ordered turnover.

At the trial, Mr. Saunders testified that, although he was not an attorney, he did "a Google search on the internet to see what legal circumstances existed that would allow someone to redeem a car or any other collateral that had been repossessed prior to their filing bankruptcy." He further testified that after an hour long search for "precedent law or a case or something of the type," it appeared to him that Shorty's "would be perfectly within his rights to maintain possession of the car." While it may have been in Shorty's best interest to retain counsel after receiving the request for turnover, the Court does not find the failure to do so as egregious, intentional misconduct. In fact, as explained above, the law surrounding the issue of a pre-petition repossession is certainly unsettled. This fact, along with the significant weight of the minority cases supporting the conclusion that Shorty's conduct may not have violated the automatic stay, persuades the Court that the Defendant did not act maliciously, but instead acted under a good faith belief that it was entitled to retain the Honda Passport until the Court ordered turnover.

In addition, the Court does not find that Shorty's statement in the November 20, 2014 letter that the Debtor "may redeem the Honda by tendering the past due balance of $4,025.36 in cash of Certified Funds to Shorty's Used Cars Inc." amounts to any significant attempt to collect on its pre-petition debt. Rather, it simply reiterates the fact that the Debtor was still legally entitled to redeem the vehicle despite Shorty's repossession.

## IV. CONCLUSION

The Court concludes that Shorty's willfully violated the automatic stay of 11 U.S.C.

§ 362(a) by refusing to turn over the repossessed Honda Passport. The Debtor incurred $7,300.00 in attorney's fees on account of the violation. The Debtor is entitled to recover those fees from Shorty's pursuant to 11 U.S.C. § 362(k)(1). Based on the above, the Court will enter a separate judgment in favor of the Debtor and against Shorty's.

Dated at Savannah, Georgia, this 26th day of August, 2016.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia